

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY ADVOCATES FOR RENEWABLE ENERGY STEWARDSHIP,<br><br>Plaintiff,<br>vs.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; UNITED STATES BUREAU OF LAND MANAGEMENT; KEN SALAZAR, Secretary of the Interior; ROBERT ABBEY, Director, Bureau of Land Management; TERI RAMAL, District Manager, BLM California Desert District; MARGARET GOODRO, Field Manager, BLM El Centro Field Office; OCOTILLO EXPRESS LLC; PATTERN RENEWABLES LP; PATTERN ENERGY GROUP LP; PATTERN ENERGY GROUP LLC,<br><br>Defendants. | CASE NO. 12cv1499 WQH-MDD<br><br>ORDER |

HAYES, Judge:

The matters before the Court are 1) the Ex Parte Motion for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue (ECF No. 12) and 2) the Supplemental Motion for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue (ECF No. 25) filed by Plaintiff Community Advocates for Renewable Energy Stewardship ("CARES").
- 1 -                                                                                                                          12cv1499-WQH-MDD

**BACKGROUND**

On May 14, 2012, Plaintiff initiated this action by filing a Complaint. On July 18, 2012, Plaintiff filed a First Amended Complaint ("Complaint") against the United States Department of Interior; the United States Bureau of Land Management ("BLM"); Ken Salazar, Secretary of the Department of Interior; Robert Abbey, Director of BLM; Teri Raml, District Manager of BLM California Desert District; Margaret Goodro, Field Manager of BLM El Centro Field Office ("Federal Defendants") and Pattern Energy Group LP, Pattern Energy Group LLC, Pattern Renewables LP, and Ocotillo Express LLC ("Pattern Defendants"). (ECF No. 23).

In the Complaint, Plaintiff asserts claims under the Administrative Procedures Act ("APA"), Federal Land Policy and Management Act ("FLPMA"), National Environmental Policy Act ("NEPA"), California Desert Conservation Area ("CDCA") Plan, Safe Drinking Water Act, and Executive Order 12898. Plaintiff alleges that the Ocotillo Wind Energy Facility ("OWEF"), a proposed utility-scale wind energy development in Imperial County, California, did not follow wind development mandates established by BLM to comply with NEPA and FLPMA. Plaintiff alleges that "[p]roject specific topographic maps, designs and engineering packages were not submitted [by Pattern Defendants] during the NEPA environmental review process. Without this information, NEPA, the APA, and FLPMA were violated, which means the BLM could not legally approve the Project for construction." *Id.* at 2. Plaintiff alleges that BLM did not follow their own regulations and "illegally amended the California Desert Conservation Area Plan to allow wind energy development in an ineligible area without the required wind resources." *Id.* at 3. Plaintiff alleges that Pattern Defendants illegally commenced construction without required permits, constructed an unapproved water storage pond, and illegally pumped water from a federally-protected water supply. Plaintiff alleges that the OWEF project discriminates against low-income populations.

On June 29, 2012, Plaintiff filed an Ex Parte Motion for Temporary Restraining Order. (ECF No. 12). Plaintiff seeks a temporary restraining order and preliminary injunction

> ... halting Defendants from constructing and/or developing the Ocotillo Wind Energy Facility ("Project") on federally-protected lands at issue in this case. This restraining order and injunction should restrain and enjoin Defendants from: (1) issuing Notices to Proceed or other authorizations for continued construction and

development of the Project; and/or (2) construction, grading, mobilization, or ground-disturbing activities on the Project.

*Id.* at 2. Plaintiff seeks this injunction on the following grounds:

> (1) Defendant PATTERN failed to comply with NEPA and the BLM Wind Energy Plan of Development and did not submit scaled topographic maps and project-specific engineering and design packages as part of the NEPA/EIS process; and (2) the project area is ineligible for a land use Plan Amendment for wind energy development because the stated wind speeds in the record are below the BLM's programmatic wind speed thresholds.

*Id.* at 2. On July 9, 2012, Federal Defendants and Pattern Defendants filed oppositions contending that Plaintiff lacks standing, failed to avail itself of administrative remedies in the project review process, fails to show irreparable harm, and has not demonstrated a likelihood of success on the merits of its claims. (ECF Nos. 19, 20). On July 12, 2012, Plaintiff filed a reply. (ECF No. 22).

On July 25, 2012, Plaintiff filed a Supplemental Motion for Temporary Restraining Order. (ECF No. 25). Plaintiff seeks an identical temporary restraining order and preliminary injunction against Defendants on the following grounds:

> Pattern Energy has violated the FLPMA, specifically section 1765(a) and (b), in four ways: (1) by not preparing engineered structural foundation designs prior to approval; (2) by not preparing a final civil engineering grading plan prior to approval; (3) by grading new access roads that exceed the maximum disturbance width under the Right of Way grant, and (4) by siting wind turbines too close together in violation of the Right of Way grant.

*Id.* at 2. On August 13, 2012, Federal Defendants and Pattern Defendants filed oppositions again contending that Plaintiff lacks standing, failed to avail itself of administrative remedies in the project review process, fails to show irreparable harm, and has not demonstrated a likelihood of success on the merits of its claims. (ECF Nos. 28, 29). On August 20, 2012, Plaintiff filed a reply. (ECF No. 30).

On September 7, 2012, the Court heard oral argument. (ECF No. 33).

## DISCUSSION

### I. Standing

Defendants contend that Plaintiff lacks standing to assert its claims. Federal Defendants contend that the Complaint fails to explain "how Plaintiff or its members will suffer 'concrete, particularized, and actual or imminent' injury as a result of Federal Defendants' alleged

wrongdoing .... [N]o particular member with standing is identified either in the Complaint or in the instant motion .... [T]he Complaint lacks any allegations as to CARES' purpose, how that purpose will be affected by the Project, or how the claim asserted or the relief requested does not require the participation of individual members in the lawsuit." (ECF No. 20 at 20) (citations omitted). Federal Defendants contend that "Plaintiff's alleged injury is a generalized grievance not tethered to a potential injury to Plaintiff or its members." (ECF No. 28 at 14). Pattern Defendants contend that Plaintiff "has not even alleged, let alone offered evidence to support, the facts necessary to demonstrate standing to pursue any of its claims." (ECF No. 19 at 6).

Plaintiff contends that "[t]he question of standing is not relevant to the issues at hand of whether serious questions have been raised on the merits that require this project to be enjoined." (ECF No. 22 at 10). However, "in a abundance of caution" (ECF No. 30 at 11), Plaintiff submits the declaration of its counsel, William Pate, who states:

> CARES currently has sixteen members, all of whom, including myself, are part or full-time residents of Ocotillo, Nomirage or Coyote Wells, and/or property owners. Members include an engineer and two retired California Superior Court judges. CARES members have recreated and used the Project Area for over three decades....
>
> The geographic proximity to and use of the Project Area will cause harm to CARES members in the form of ... noise, view obstruction, decreased and/or condemned property values, flooding, water contamination and the associated health effects of wind turbines and exposure to EMFs from DC current.

(ECF No. 30-1 at 2).

The doctrine of standing "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Summers v. Earth Island Institute,* 555 U.S. 488, 493 (2009) (quotations omitted). Plaintiff bears the burden of showing that he has standing. *Id.* When the plaintiff is not himself the object of the challenged government action, standing is not precluded but is substantially more difficult to establish. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 562 (1992). If the plaintiff before a federal court lacks standing to pursue its claims, the court lacks jurisdiction to proceed. *See id.* at 560-61.

To have standing under Article III, a plaintiff must establish that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Pacific Rivers Council v. U.S. Forest Service,* — F.3d —, 2012 WL 2333558 at * 7 (June 20, 2012; 9th Cir. 2012), quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180–81 (2000). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction ... A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Services Co., Inc. v. Baldrige,* 844 F.2d 668, 674 (9th Cir. 1988); *see Lujan,* 504 U.S. at 573-74 ("[A] plaintiff raising only a generally available grievance about government-claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large-does not state an Article III case or controversy"); *see Benton Franklin Riverfront Trailway & Bridge Comm. v. Skinner,* 914 F.2d 1496, 1990 WL 140515 at 1 (9th Cir. 1990) (unpublished) ("Standing cannot be established simply by pleading that the government must be administered according to law").

An organization may sue on behalf of its members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Laidlaw,* 528 U.S. at 181. Standing "is not an ingenious academic exercise in the conceivable ... [but] requires ... a factual showing of perceptible harm .... In part because of the difficulty of verifying the facts upon which such probabilistic standing depends, the Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm...." *Summers,* 555 U.S. at 499 (quotations omitted).

"While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice." *Id.* at 494. To sustain standing on the basis of aesthetic and recreational injury, it would be sufficient to show that plaintiff had "repeatedly visited an area affected by a project, that he had concrete plans to do so again, and that his recreational or aesthetic interests would be harmed if the project went forward .... [A] vague desire to return to the area without any description of concrete plans, or indeed any specification of when the some day will be does not support a finding of actual or imminent injury." *Wilderness Soc., Inc. v. Rey,* 622 F.3d 1251, 1256 (9th Cir. 2010) (quotations omitted); *see also Pacific Rivers Council,* 2012 WL 2333558 at * 8 ("...*Summers* demands more than a showing of a general intention of returning .... The member must 'show[ ] that he is likely to encounter an *affected* area ... in his future visits' ... [and] 'allege that *his* future enjoyment is ... threatened by the ... Project.'"(emphasis in original)).

In this case, Plaintiff CARES is an organization of unknown purpose and largely unidentified membership. One CARES member has been identified on the record; it is Plaintiff's counsel who states that he is a "part or full-time resident of Ocotillo, Nomirage or Coyote Wells, and/or [a] property owner" and that "CARES members have recreated and used the Project Area for over three decades." (ECF No. 30-1 at 2). Pate does not indicate where he lives in proximity to the OWEF project, where and when he has recreated in that area, whether he has "concrete plans" to revisit that particular area in the future, or any non-speculative injury he has suffered as a result of construction of the project. *See Rey,* 622 F.3d at 1256. Pate's declaration fails to "demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Baldrige,* 844 F.2d at 674.

At oral argument, Plaintiff's counsel identified himself as an individual member and stated that a number of CARES members were present in the audience. The statement of counsel at oral argument fails to establish that Pate or any other named member "would otherwise have standing to sue in their own right." *Laidlaw,* 528 U.S. at 181. There is no evidence regarding the purpose of CARES as an organization or that the interests at stake in

1  this case are germane to that purpose. *See Laidlaw,* 528 U.S. at 181. Similarly there is no
2  evidence that "neither the claim asserted nor the relief requested requires the participation of
3  individual members in the lawsuit." *Id.* Based on the record, the Court finds that Plaintiff fails
4  "to identify members who have suffered the requisite harm." *Summers,* 555 U.S. at 499. The
5  Court concludes that Plaintiff has not "alleged such a personal stake in the outcome of the
6  controversy as to warrant ... invocation of federal-court jurisdiction." *Id.* at 493.

7  **II.    Failure to Exhaust Administrative Remedies**

8        Defendants contend that Plaintiff's claims should be dismissed for failure to exhaust
9  administrative remedies available through the Department of Interior appeals process and that
10 Plaintiff waived its claims when it failed to provide comments during the public notice and
11 comments process. Federal Defendants contend that Department of Interior regulations specify
12 that any interested party may protest a planning approval or amendment, and that the party
13 must do so within thirty days of the publication of the notice of the Environmental Impact
14 Statement ("EIS"). Federal Defendants assert: "it does not appear that Plaintiff participated
15 in the planning process .... Nor did CARES protest the CDCA Plan amendment associated with
16 the OWEF." (ECF No. 20 at 21). Pattern Defendants assert that "CARES did not submit any
17 comments on the [Final]EIS at all." (ECF No. 29 at 13). Pattern Defendants contend that "[a]
18 party that fails to raise ... an issue during NEPA's notice and comment process has failed to
19 exhaust its administrative remedies and thereby waives the right to challenge the agency
20 decision on that issue through judicial review." (ECF No. 19 at 17).

21       Plaintiff contends that "[t]he public need not raise as an issue during the approval
22 process that BLM and Pattern must comply with the law... That said, issues and concerns over
23 the proposed shallow foundations of 2 to 8 feet in depth were raised in public comments."
24 (ECF No. 30 at 11). Plaintiff asserts that "members of CARES did timely submit a protest
25 letter of the proposed Plan Amendment, inclusive of one in the record dated April 8, 2012."
26 (ECF No. 22 at 11). At oral argument, Plaintiff stated that Pate and his family submitted
27 emails and a letter about the project but that the emails and letter cannot be found on the public
28 record.

"Persons challenging an agency's compliance with NEPA must 'structure their participation so that it ... alerts the agency to the [parties'] position and contentions,' in order to allow the agency to give the issue meaningful consideration." *Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 764-65 (2004) (quoting *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.,* 435 U.S. 519, 553 (1978)); *see also Idaho Sporting Congress, Inc. v. Rittenhouse,* 305 F.3d 957, 965 (9th Cir. 2002) ("The rationale underlying the exhaustion requirement is to avoid premature claims and to ensure that the agency possessed of the most expertise in an area be given first shot at resolving a claimant's difficulties."). However, a litigant need not personally raise an issue at the administrative level so long as the issue was raised by another party and the agency had the opportunity to consider the objection. *Conservation Congress v. U.S. Forest Service,* 555 F.Supp.2d 1093, 1106 (E.D.Cal. 2008).

Where agency rules establish administrative remedies or appeals, the agency action is subject to judicial review "[w]hen an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule." *Darby v. Cisneros,* 509 U.S. 137, 146 (1993); *see also BioDiversity Conservation Alliance v. Bureau of Land Mgmt.,* 608 F.3d 709, 714 (10th Cir. 2010) ("[A] party challenging an agency action must first exhaust any administrative remedies"); *Winnemem Wintu Tribe v. U.S. Dept. of Interior,* 725 F.Supp.2d 1119, 1139 (E.D. Cal. 2010) ("[T]o bring a claim under the APA for a violation of the NEPA, plaintiffs must show that they have exhausted available administrative remedies prior to bringing an action in federal court.").

A party's failure to object to an agency action can result in the forfeiture or waiver of that objection after the public review and commentary period has expired. *Dep't of Transp.,* 541 U.S. at 764-65 (holding, "[b]ecause respondents did not raise these particular objections ... [the agency] was not given the opportunity to examine any proposed alternatives .... Respondents have therefore forfeited any [such] objection ...."); *see also North Idaho Cmty. Action Network v. U.S. Dept. of Transp.,* 545 F.3d 1147, 1156 n.2 (9th Cir. 2008) (holding, "because the tunnel alternative was not raised and identified until ... well after the notice and comment periods for the ... EIS and ... EA closed, any objection to the failure to consider that

1 alternative has been waived.").

2 The appeals and protest procedures for proposed BLM resource management plan 3 amendments are outlined in 43 C.F.R. § 1610.5-2. Those regulations specify that:

> (a) Any person who participated in the planning process and has an interest which is or may be adversely affected by the approval or amendment of a resource management plan may protest such approval or amendment ....
>
> (1) The protest shall be in writing and shall be filed with the Director. The protest shall be filed within 30 days of the date the Environmental Protection Agency published the notice of receipt of the final environmental impact statement containing the plan or amendment in the Federal Register ....
>
> (2) The protest shall contain: (i) The name, mailing address, telephone number and interest of the person filing the protest; (ii) A statement of the issue or issues being protested; (iii) A statement of the part or parts of the plan or amendment being protested; (iv) A copy of all documents addressing the issue or issues that were submitted during the planning process by the protesting party or an indication of the date the issue or issues were discussed for the record; and (v) A concise statement explaining why the State Director's decision is believed to be wrong ....

43 C.F.R. § 1610.5-2.

Plaintiff fails to provide any documents in the record that support the assertion that its members submitted emails and letters during the public comments process for the OWEF Project. Plaintiff fails to provide any documents in the record that support the assertion that its members and other members of the public raised the same objections in the public comments process that Plaintiff raises in its moving papers. Based on the record before the Court, Plaintiff fails to demonstrate that it exhausted administrative remedies prior to seeking judicial review or that it structured its participation in the administrative process so as to alert the agency to the specific objections, allowing the agency to meaningfully consider the issue. *See Dep't of Transp.*, 541 U.S. at 764-65.

///
///
///
///
///
///

# CONCLUSION

IT IS HEREBY ORDERED that this case is DISMISSED for lack of standing by Plaintiff Community Advocates for Renewable Energy Stewardship. The Court lacks subject matter jurisdiction to proceed in this case.

DATED: 9/21/12

WILLIAM Q. HAYES
United States District Judge